## Major, a Minor, Appellee, *v.* Liggett, a Minor, Appellant.

(No. 773—Decided December 5, 1942.)

*Mr. George C. McKelvey* and *Mr. Austin C. Furbee,* for appellee.

*Mr. Edmund L. Matz* and *Mr. John P. Cinque, Jr.,* for appellant.

PHILLIPS, J. Plaintiff sued defendant in the trial court to recover damages for personal injuries and predicated her right to a judgment against defendant on the wanton misconduct of the latter in the operation of an automobile in which plaintiff was riding in a westerly direction on the National highway in Belmont county, about 11:30 o'clock p. m. on the seventh day of January, 1939.

From a judgment entered upon a jury verdict for the plaintiff, defendant appealed to this court on questions of law and fact.

The cause is not properly appealable as one on questions of law and fact, but, it appearing that a bill of exceptions has been duly filed herein, the words "and fact" are stricken from defendant's notice of appeal and the case is retained and will be determined as an appeal on questions of law.

Plaintiff's amended petition contained the following allegation:

"The defendant, while operating said automobile at a high and dangerous and unlawful rate of speed, to wit, in excess of fifty miles an hour, wilfully and wantonly removed his hands from the steering wheel thereof and his eyes from the roadway and turned to and embraced and kissed his said companion Alma Stranges, well knowing that such misconduct upon his part in the operation of said automobile would cause him to lose control thereof and would in all probability result in injury or death to this plaintiff, and that thereupon said automobile did go out of control, swerved to the left, crossed said highway and the south berm thereof and crashed with terrific force head-on into a low concrete wall located at the south edge of said highway; that said automobile struck said concrete wall with such great force as to move said wall from its foundation and extensively damaged said automobile."

Defendant demurred to plaintiff's amended petition on the ground that the quoted allegation therefrom was not sufficient to charge him with wanton misconduct and contends that such allegation merely charges him with negligence in removing his hands from the steering wheel of the car, which he was operating, and his eyes from the roadway, while operating such car at a speed in excess of fifty miles an hour, and pleads the conclusion that the defendant well knew that "such alleged misconduct on his part would cause him to lose control thereof and in all probability result in injury or death to the plaintiff."

In our opinion, the quoted allegation of plaintiff's amended petition sufficiently alleged a cause of action for wanton misconduct and was good against a demurrer directed against it on the ground that it did not constitute a cause of action against defendant for wanton misconduct, and that the trial court did not err prejudicially to defendant in overruling such demurrer.

We have read the record submitted to us, and, as the result thereof, have concluded that in this case defendant's conduct must be judged not only at the moment when his car collided with the stone wall, to which reference is made in the quoted allegation of the amended petition, and immediately prior thereto, but must be carefully weighed and measured during the entire trip to the place of collision.

There is evidence, some of which defendant's testimony corroborated, that earlier on the trip defendant operated his automobile at seventy miles an hour and, during the entire trip, at a usual speed of forty-five to sixty miles an hour, during all of which time and while operating his automobile at such speeds, he had his right arm around his girl companion seated beside him; that he admitted kissing her during the trip while

driving between thirty-five and forty miles an hour; that on another occasion he permitted the car to drift onto the berm of the highway on which he was traveling at such speed and failed to heed the admonition of a fellow-rider to watch where he was driving; that defendant knew that the highway upon which he was traveling was under construction; that he was traveling upon a portion thereof guarded by warning signs; that mud and loose dirt tracked by road construction trucks were generally distributed upon that portion of the highway; and that there was something on the highway at the point where he turned his car off.

Defendant qualified and was examined as an expert in the operation of automobiles. He stated that he knew that his actions in turning to kiss his girl companion would turn his automobile to the left and demonstrated to the trial judge and jury how he turned it off the road while thus engaged; explained how such act of his would cause his automobile to turn to the left by testifying that when he turned to kiss his companion his left hand would naturally turn his automobile off the highway; fixed the place where he turned to kiss her at two hundred feet distant from the wall with which his automobile later collided; fixed the speed of his car at that time at thirty-five miles an hour; testified that immediately prior to the collision he had his arm around his girl companion, who was sitting close to him; and told the court and jury that he turned his head to the right, took his eyes off the road, embraced her with his right arm and kissed her on the lips for three or four seconds.

There is evidence that while he was thus occupied, a fellow rider called to him concerning the operation of his automobile which was then about seventy-five feet from the concrete wall situated on the south side of the south berm of the highway on which his automobile

was traveling, and that his automobile collided almost instantly with the east end of such wall.

The defendant testified that, after he discovered that his automobile was off the main vehicular travelable portion of the highway and headed for the wall, he tried to but could not avoid the collision therewith.

A witness who saw the tracks of defendant's automobile, which led from the north side of the highway "sort of 'catty-cornered' to the wall," measured them and testified that the distance from the north traffic lane of the highway to the wall was about one hundred feet.

The record discloses that the wall to which reference is made herein was of concrete construction, one foot thick, two feet high and twenty-nine feet long; that it was imbedded in the ground for its entire length from six to nine inches and banked by earth on one side and on its west end; that it paralleled the highway and was situated about nine feet south of the improved portion of and on the southerly side thereof; that as the result of the collision therewith, the wall was moved endwise from east to west a distance of from six to eight inches, was thrown out of line to the south and was broken; and that a house situated several feet south of the wall was shaken by the collision.

Tested by the rule laid down by the Supreme Court in the case of *Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St., 567, 200 N. E., 843, which modified the rule announced in the third paragraph of the syllabus of *Higbee Co.* v. *Jackson,* 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131, and in the second paragraph of the syllabus of the case of *Reserve Trucking Co.* v. *Fairchild,* 128 Ohio St., 519, 191 N. E., 745, as to what constituted wanton misconduct in Ohio in an action for personal injuries, we are of opinion that such evidence presented a question of fact for determination by the

jury, under proper instructions from the court, as to whether such conduct manifested a disposition to perversity and was, under such surrounding circumstances and existing conditions, such that defendant acting as he did, or in failing to act, was conscious from his knowledge of such surrounding circumstances and existing conditions that his conduct would in all common probability result in injury to his guests, and was not a question of law for the court. Certainly from such evidence reasonable minds could come to different conclusions as to the nature of defendant's conduct, and we so hold. See, also, *Jenkins* v. *Sharp,* 140 Ohio St., 80, 42 N. E. (2d), 755.

It is apparent then that the trial judge did not err, as urged by defendant, in overruling defendant's motions for a verdict directed in his favor, made at the close of plaintiff's case and at the conclusion of all the evidence. We find no error prejudicial to defendant, as claimed, in the admission and rejection of such evidence.

We have carefully examined the opening statement of counsel for defendant and are of opinion that the lower court did not err prejudicially to defendant in overruling his motion for a verdict directed in his favor at the conclusion thereof.

The defendant assigns, as a ground of reversal of the judgment of that court, the refusal of the trial judge to submit to the jury in writing before argument the following propositions of law:

"In this action the plaintiff was a guest passenger, therefore, it is a case in which the guest statute of this state applies.

"In view of this fact it is incumbent upon the court to charge you, ladies and gentlemen of the jury, that no recovery can be had by the plaintiff if the evidence merely shows that the defendant at the time alleged

was guilty of negligence, no matter how gross or how great the negligence may have been.

"Before the plaintiff would be entitled to recover in this action you must find by a preponderance of all the evidence that the defendant was guilty of wilful or wanton misconduct in the operation of said automobile and that such wilful or wanton misconduct was a direct and proximate cause of plaintiff's injuries, if any.

"Wilful misconduct implies an intent or purpose to injure.

"Wanton misconduct would be such conduct on the part of the defendant as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the defendant in acting, or failing to act, is conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all probability result in injury.

"Wantonness is a synonym for what is popularly known as 'cussedness' and cussedness is a disposition to perversity.

"Perversity means a state or instance of being obstinate or persistent in what is wrong, self-willed or stubborn.

"Therefore, ladies and gentlemen of the jury, before this plaintiff would be entitled to a verdict in her favor in this action you must not only find that the defendant was guilty of misconduct in the operation of his motor vehicle at the time and place in question, but you must further find that such misconduct amounted to obstinacy or persistency on his part in what is wrong.

"The court further charges you that even though you find from the evidence that the vehicle in which the plaintiff was riding was placed in a position of peril by the misconduct of the defendant, you must still find for the defendant, if you further find from the evidence

that defendant, after realizing his peril, exercised care to avert the collision however slight.

"The court instructs the jury that if the defendant after the discovery of his peril that the automobile had or was about to go on to the berm thereof, attempted to so operate his automobile as to prevent the collision, then the plaintiff cannot recover in this action even though his attempt to prevent the collision was not successful."

The submission to the jury of the first proposition of law was properly refused.

We believe that that charge, as submitted to the trial court by defendant, attempted to define wanton misconduct as that term is defined in the syllabus of the case of *Universal Concrete Pipe Co.* v. *Bassett, supra,* and is correct in part.

However, the request with respect thereto contains a statement found in the opinion of that case, but not included in the syllabus, which we understand contains the law of the case, which statement reads:

"Wantonness is a synonym for what is popularly known as 'cussedness', and cussedness is a disposition to perversity."

In our opinion such definition of wantonness is not the definition thereof approved by the Supreme Court. Accordingly we believe the inclusion of the quoted statement in such instruction rendered the whole request erroneous.

Further, the last paragraph of the first proposition allowed the jury to speculate as to what was embraced within the word "wrong," and was repetitious, misleading and confusing to the jury.

We are of opinion that the trial court properly refused to submit defendant's second and third requests to charge before argument to the jury for the reason that we believe, under these charges, the defendant could be guilty of the grossest kind of wanton miscon-

duct and be exonerated from such wanton misconduct by the exercise of a slight degree of care after the consequences of his misconduct could not be avoided.

It is believed no error prejudicial to the defendant was committed by the refusal of the trial judge to submit to the jury the foregoing special requests to charge before argument.

It is claimed that counsel for plaintiff in argument to the jury said:

"The jury in arriving at its verdict should put themselves in the place of the plaintiff.

"Would you exchange a good foot and suffer the injuries plaintiff suffered for $10,000.00?

"Jean Major was unlucky on that day in that she was riding in defendant's automobile and that she was also lucky that day in that she was not injured worse than she was or killed. That the defendant was lucky on that day that someone had not been killed in the course of the accident or he would have been in court answering a charge of second degree manslaughter rather than a case of this nature.

"If your daughter were in the place of the plaintiff, what would you think your daughter would deserve?

"That in driving his automobile on this day the defendant violated the criminal statutes of Ohio and if anyone had been killed in the accident he would be here on trial answering a charge of second degree murder."

Counsel for defendant made no objection to the argument "because an objection would tend to aggravate the situation," and contends "that it is a well established principle of law that counsel should not be placed in a hazardous position by being forced to object to such conduct in the presence and hearing of the jury."

Arguments of counsel for the respective parties were not reported and the record reveals the happening of

such occurrence by affidavits only of defendant and his father filed in the trial court, some days after the return of the jury's verdict, for the purpose of supporting his motion for a new trial.

It is questionable whether there is evidence before us that the claimed improper remarks were made. See *State* v. *Young*, 77 Ohio St., 529, 83 N. E., 898.

Assuming, however, such remarks were made as charged yet considering the evidence presented as a whole the conclusion is reached that they did not prejudicially influence the jury as to finding defendant guilty of wanton misconduct or the size of the verdict.

Viewing the picture presented upon this phase of the case in its entirety, the conclusion is reached that the trial judge did not err prejudicially to defendant's rights in overruling defendant's motion for a new trial on this ground.

Plaintiff and her mother testified over defendant's objection that while plaintiff was confined to the hospital her hair began to fall out, and there is evidence that she received a severe blow upon her forehead causing an indentation in the skull and severe headaches, all of which evidence we believe was properly admitted under the allegations of her amended petition that she was seriously and permanently injured and "became nervous."

The trial judge charged the jury in his general charge, among other things, concerning plaintiff's alleged injuries as follows:

"Take into consideration the alleged condition of her hair; whether or not there is any ill-result or effect to her hair. If there is, whether or not that is permanent, or temporary, and after taking into consideration all the facts and circumstances in and surrounding that question, and proven by a preponderance of the evidence and bearing upon the question of the

extent and duration of plaintiff's injuries, if any she received, you will then, if she be entitled to a verdict determine the amount thereof."

Defendant contends that "plaintiff was an attractive young lady and the injection into the case of this issue was prejudicial error."

We find no merit in this contention as to prejudicial error and believe the trial judge committed no error prejudicial to defendant in charging as he did upon this phase of this case.

We have examined the record and have concluded that the verdict of the jury is not excessive, was not rendered under the influence of passion or prejudice as claimed and is sustained by the evidence.

Other errors apparent upon the face of the record have been assigned as grounds for reversal of the judgment of the trial court, but were not argued. We will not undertake to minutely search so voluminous a record to determine whether such errors exist and accordingly we do not pass upon them.

It is apparent from what we have said that the verdict should not "have been in favor of defendant instead of plaintiff," that it is not contrary to law and that the trial court did not err, as is claimed, in overruling defendant's motion for judgment in his favor notwithstanding the verdict of the jury against him.

The judgment of the lower court is affirmed.

*Judgment affirmed.*

CARTER, P. J., and NICHOLS, J., concur.