Taft, J.
 

 The first question to be considered is whether the trial court erred in refusing to’ grant the motion of defendant for a directed verdict.
 

 It is conceded that defendant’s liability is governed by Section 6308-6, General Code. That section reads:
 

 “The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.”
 

 In determining whether there was any substantial evidence tending to prove “wilful or wanton misconduct” of the defendant, it is necessary to outline in some detail the allegations of the petition and the evidence appearing in the record.
 

 On April 15, 1946, the day of the collision, defendant took decedent with him on an automobile trip from Belmont, where they lived, to Bellaire. On the way, they stopped in Glencoe for gasoline and each had a bottle of beer. At Bellaire, before starting their return trip, they each had a sandwich and three glasses of beer. There was no claim made in the petition or at the trial that defendant was intoxicated.
 

 
 *43
 
 According to the allegations of the petition, at about 4:15 p. m., defendant was driving his 1934 Chevrolet in a westerly direction along Belmont county road No. 126 about ñve miles east of Belmont when the vehicle collided with a concrete culvert headwall. It is further alleged that the traveled portion of the 'highway was improved with a concrete surface 20 feet in width with a berm on each side approximately six feet wide; that the concrete culvert headwall was on the outside edge of the north berm of the road and was approximately one foot wide and five feet long -and buried in the ground approximately three feet; .and that “defendant was driving and operating his said automobile at a high and unlawful rate of speed, .at more than 50 miles per hour, and at a rate of speed greater than was reasonable or proper.”
 

 In the portion of the petition in which plaintiff attempts to allege wilful or wanton misconduct, it is stated:
 

 “ * * * that it was raining * * * and the pavement was wet and slippery, that the windshield of defendant’s automobile was covered with water, which facts were known to the defendant but notwithstanding, defendant continued to operate and drive said automobile at said high and dangerous rate of speed although he was unable to see the road ahead of him and wilfully and wantonly drove said automobile on the north side of the traveled portion thereof a distance of approximately 150 feet and continued on to the berm for .-a distance of .150 feet more and into and against said •culvert with such forcé as to tear it from its foundation and moved it approximately one foot.
 

 “That defendant knew of the existence of said culvert headwall, that he was unable to see out of his .-automobile but notwithstanding, wilfully and wantonly attempted to drive said automobile on the berm of ;said highway at said high and dangerous rate of speed
 
 *44
 
 and his acts in so doing were known to him to be highly dangerous to plaintiff’s decedent and would in all common probabilities result in injury or death to plaintiff’s decedent and without regard to and with indifference to his safety.”
 

 Since defendant was driving west, the north portion of the highway was the right hand side for him. The above-quoted portion of the petition, with reference to defendant’s driving although “unable to see the road ahead of him,” is susceptible of a construction that such blind driving was only for approximately 150 feet on the traveled or concrete portion of the road and 150 feet on the berm before collision with the culvert. There was no evidence tending to prove that such blind driving, immediately preceding the collision, was for any greater distance.
 

 There was a gradual upgrade in the highway as it approached the culvert from the east.
 

 The only direct evidence as to defendant’s speed just before the accident was his testimony that he was going 35 or 40 miles per hour. While he did testify his car would go faster than that and admitted that he was “giving the car all the gas she would take,” it should be remembered that he was driving a 12-year-old Chevrolet up a grade. Notwithstanding the damage to car and culvert from the collision, we believe, therefore, that it can hardly be argued seriously that there was substantial evidence of a speed in excess of 35 to 40 miles per hour.
 

 There was no direct evidence that defendant knew of the existence of this culvert. The facts, that defendant had driven over the same road on the way to Bellaire and that he had lived within a few miles of the location of the culvert and thus might have been over the road on other occasions, would heardly justify the jury in inferring that he had any knowledge about the
 
 *45
 
 danger from such culvert. There was no evidence as to other culverts on this road or as to their existence on roads in that vicinity.
 

 There was no evidence that defendant knew his car had left the paved portion of the road before he hit the culvert. He testified positively that he did not know. While there was evidence that the berm was muddy and the tracks made thereon were three inches deep, the petition alleges that the pavement was wet and slippery and that defendant was unable to see the road during the period after his car got off onto the berm. Therefore, we do not believe that, in view of his positive testimony that he did not know, it can fairly be argued that defendant knew that he was off the paved portion of the road before his car hit the culvert.
 

 When asked why he continued to drive 300 feet when he could not see because of the rain on his windshield, defendant stated that “I just took a chance on nothing happening.”
 

 The evidence as interpreted most favorably to plaintiff discloses that, at and immediately preceding the collision with the concrete culvert:
 

 (1) Defendant was driving about 35 to 40 miles per hour up a grade which was as fast as he could go in his 12-year-old Chevrolet.
 

 (2) Defendant was driving on the right hand side of a 20-foot concrete road which had a six-foot berm on each side.
 

 (3) For a distance of 300 feet defendant could not see the road because of the rain and because his windshield wiper did not work when he was going up a grade with the accelerator pushed in.
 

 (4) Defendant knew that he was taking a chance that nothing would happen while he was driving those 300 feet.
 

 
 *46
 
 (5) Defendant did not know that his car was off the concrete during the last 150 feet of those 300 feet.
 

 In
 
 Universal Concrete Pipe Co.
 
 v.
 
 Bassett,
 
 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646, the second paragraph of the syllabus defines “wanton misconduct,” as that term is used in Section 6308-6, G-eneral Code, as follows:
 

 “Wanton misconduct is such
 
 conduct
 
 as
 
 manifests
 
 a
 
 disposition to perversity, and
 
 it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be
 
 conscious, from
 
 his
 
 knowledge
 
 of such surrounding circumstances and existing conditions,
 
 that
 
 his
 
 conduct will in all common probability result in
 
 injury.” (Emphasis ours.)
 

 This definition of “wanton misconduct” was recently approved and followed in the syllabus in
 
 Masters
 
 v.
 
 N. Y. Central Rd. Co.,
 
 147 Ohio St., 293, 70 N. E. (2d), 898.
 

 VVTe do not believe that any reasonable interpretation of the evidence would justify either the conclusion (a) that defendant's conduct manifested “a disposition to perversity,” or (b) that defendant knew that his conduct would “in all common
 
 probability
 
 result in injury.” Plaintiff emphasizes the admission by defendant that he “took a
 
 chance
 
 on nothing happening.” There is a wide gap between chance and probability.
 

 Plaintiff claims that the decision in
 
 Major, a Minor,
 
 v.
 
 Liggett, a Minor,
 
 72 Ohio App., 71, 50 N. E. (2d), 795, decided by the Court of Appeals for Belmont county, necessarily requires the affirmance of the judgment of the trial court in the instant case. In relying on the
 
 Liggett case,
 
 plaintiff points out that a motion to certify the record in that case was overruled. The ruling of this court on that motion indicates only that this court did not then consider the
 
 *47
 

 Liggett case
 
 as one of public or great general interest. Perhaps the reason for a different ruling on the motion to certify in the instant case was that this court was concerned not only with apparent error in the judgment of the Court of Appeals, but also with such facts as the publication of the opinion in the
 
 Liggett case
 
 in the official reports after this court had overruled the motion to certify the record in that case and the urging of the Liggett decision by counsel in this case as a precedent requiring the decision made by the lower courts. At any rate, this court is obviously not bound by the decision of the Court of Appeals in the
 
 Liggett case,
 
 even though this court overruled a motion to certify the record in that case. See
 
 Pengelly
 
 v.
 
 Thomas,
 
 151 Ohio St., 51, 84 N. E. (2d), 265.
 

 Plaintiff relies on the third paragraph of the syllabus in
 
 Higbee Co.
 
 v.
 
 Jackson,
 
 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131, stating that “an entire absence of care for the safety of others, which exhibits indifference to consequences, establishes legal wantonness.”
 

 We do not believe the evidence in the instant case discloses either “an entire absence of care” or an “indifference to-consequences.” However, even if the above-quoted language from the
 
 Higbee case
 
 could be given a construction sufficiently broad to describe defendant’s conduct in the instant case, it should be remembered that this court expressly referred to the
 
 Higbee case
 
 when it gave the more detailed definition of the term, “wanton misconduct,” in the above-quoted words from the syllabus in
 
 Universal Concrete Pipe Co. v. Bassett, supra.
 

 Plaintiff relies also on the language used in the court’s opinion in
 
 Jenkins
 
 v.
 
 Sharp,
 
 140 Ohio St., 80 at 83, 42 N. E. (2d), 755. However, the evidence in the instant case does not show that defendant had the “conscious and timely
 
 knowledge of
 
 an approach to-an
 
 unusual danger and
 
 of common
 
 probability
 
 of in
 
 *48
 
 .jury” regarded as an essential element of wanton misconduct in the language so referred to.
 

 Finally plaintiff refers to the definition of wilful misconduct in paragraph four of the syllabus in
 
 Tighe, a Minor, v. Diamond,
 
 149 Ohio St., 520, 80 N. E. (2d), 122. None of the alternatives of that definition can be fairly said to describe defendant’s conduct in the instant case. No specific intent of defendant to injure decedent is disclosed by the evidence. Also, defendant had no “full knowledge of existing conditions.” Furthermore, defendant did not know and it cannot be said he should have known that an injury to decedent would be “the
 
 probable
 
 result” of defendant’s conduct.
 

 Since our conclusion is that there was no substantial evidence tending to prove that the death of decedent was caused by the wilful or wanton misconduct of defendant, it follows that the trial court should have granted the motion of defendant for a directed verdict. It is, therefore, unnecessary to consider the other questions raised by appellant. The judgment of the Court of Appeals is reversed and final judgment is rendered for appellant.
 

 Judgment reversed.
 

 Matthias, ELart, Stewart and Turner, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.