ULRICH, A MINOR, APPELLEE, *v.* MASSIE, APPELLANT.

(No. 1021—Decided February 23, 1951.)

*Messrs. Strelitz, Halberstein & Mitchell,* for appellee.

*Mr. J. C. A. Arter,* for appellant.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Marion County, in an action wherein the appellee, Charles E. Ulrich, by Charles L. Ulrich, his father and next friend, was plaintiff and Forest Glen Massie, the appellant, was defendant. The parties will be hereinafter referred to as plaintiff and defendant.

The action is one for damages for personal injuries sustained by plaintiff while being transported, without payment therefor, as a guest in a motor vehicle operated by the defendant.

The injuries for which damages are sought were sustained by plaintiff when the automobile operated by defendant in a westerly direction from Marion, Ohio, toward Kenton, Ohio, on U. S. route No. 30S, collided with a bridge upon the highway.

The case was tried to a jury which returned a verdict of $6,500 in favor of plaintiff, and the judgment from which this appeal is taken was rendered on that verdict.

The right of plaintiff, if any, to recover in this action is governed by the provisions of Section 6308-6, General Code, which, among other things, prescribes that the owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to a guest, while being transported, without payment therefor, in or upon such vehicle, resulting from the operation thereof, unless such injuries are caused by the wilful or wanton misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.

In his petition, the plaintiff charges the defendant with both wanton and wilful misconduct.

The defendant assigns error in a number of particulars, but we will confine our discussion to the first assignment comprehending two specifications of error, as the other assignments are wholly without merit and a consideration of the first assignment will be dispositive of the whole case. The first assignment is as follows:

"The trial court erred in overruling motion of appellant at close of appellee's evidence for an instructed verdict; and also renewal of said motion at close of case.

"The trial court erred in overruling the motion of appellant for new trial and judgment notwithstanding the verdict."

This assignment raises the question as to whether, construing the admissions in the pleadings, the evidence, and all the inferences properly deducible therefrom most favorably to plaintiff, there is proof that plaintiff's injuries were caused by the wanton or wilful misconduct of the defendant.

We shall therefore consider what constitutes wanton or wilful misconduct as such terms are used in Section 6308-6, General Code.

"Within the meaning of Section 6308-6, General Code, wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (*Universal Concrete Pipe Co.* v. *Bassett*, 130 Ohio St., 567, approved and followed.)" *Helleren, Admx.,* v. *Dixon,* 152 Ohio St., 40, 86 N. E. (2d), 777.

" 'Wilful misconduct,' as used in the Ohio guest statute, Section 6308-6, General Code, * * * implies an intention or purpose to do wrong, an intentional devia-

tion from clear duty or from a definite rule of conduct, and not a mere error of judgment.''

" 'Wilful misconduct' on the part of a motorist, within the meaning of the Ohio guest statute, Section 6308-6, General Code, * .* * is either the doing of an act with specific intent to injure his passenger or, with full knowledge of existing conditions, the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of such conduct.'' *Tighe, a Minor,* v. *Diamond,* 149 Ohio St., 520, 80 N. E. (2d), 122.

In the second paragraph of the syllabus in the case of *Helleren, Admx.,* v. *Dixon, supra,* it is held:

"In an action against the operator of an automobile for injuries to or death of a nonpaying guest, where there is no substantial evidence tending to prove wilful or wanton misconduct of the defendant, the trial court should grant such defendant's motion for a directed verdict.''

We will, therefore, proceed to consider the admissions in the pleadings, the evidence, and the inferences properly deducible therefrom, in the light of the rules mentioned, and construe the same most favorably to plaintiff. Thus considered, the admissions in the pleadings, the evidence, and the inferences properly deducible therefrom tend to prove the following facts.

The defendant, during the night and a portion of the day preceding the collision in which plaintiff sustained his injuries, had only about three hours sleep, the collision occurring about 3:17 p. m. on March 21, 1948.

U. S. route 30S, upon which the collision occurred, was a duly dedicated public highway running in a general easterly and westerly direction and passing through Marion and Hardin counties in the state of Ohio.

At the time and place of the collision, which occurred approximately six miles east of the city of Kenton, the highway was improved with a macadam surface approximately 18 feet in width.

This highway crossed over a creek bed by means of a concrete bridge which was constructed with concrete sides approximately five feet, four inches high and twelve inches wide.

The concrete side on the north side of the road was located approximately four feet, two inches from the north edge of the improved portion of the road and was constructed with a concrete retaining wall angled in a northwesterly direction from the east base of the concrete abutment, the retaining wall being approximately four feet, two inches in length.

The concrete bridge was approximately nine feet in length on top and nine feet, seven inches long at the base.

At the time of the collision there was a high wind.

The defendant had driven over the road many times and was familiar with it.

Riding with the defendant in his automobile were Richard Eckert in the middle of the front seat, Jack Rubins in the right front seat, Charles Pace in the left rear seat, plaintiff in the middle of the left rear seat, and Warren Meister in the right rear seat.

The automobile collided with the north side of the bridge.

In the collision, the automobile was practically demolished, Pace and Eckert were killed, and plaintiff sustained severe injuries.

The defendant operated his automobile from the city limits of Marion at a speed of 65 miles per hour and, at a distance of one-half to three-fourths mile from the place of collision, operated it at a speed of from 75 to 80 miles per hour, the latter rate of speed apparently evidenced by the fact that the speedometer of his automobile, after the collision, indicated that at the time of collision it had been moving at a speed of approximately 80 miles per hour.

At the time the automobile was going from 75 to 80 miles per hour, it was bouncing up and down but was not out of control. For approximately two or three minutes prior to the collision (which at the rate of speed the automobile was traveling would place it two or three miles from the place of collision), Rubins was sleeping or trying to sleep, with his head against the right side of the automobile. In order to awaken Rubins, the defendant suddenly swerved the car off and back onto the paved portion of the highway.

At the time the swerving occurred the defendant was warned or cautioned by at least three of the other occupants of the automobile to "take it easy," "cut it out," or "stop it."

Such warnings or cautions were directed to the conduct of the defendant in swerving the automobile off and onto the paved portion of the road and not to the speed at which he was driving. After such warnings, the speed of the automobile did not in any way slacken.

This testimony as to the defendant swerving the automobile off and onto the paved portion of the highway is corroborated by the testimony of defendant who stated that the automobile swerved off the paved portion of the highway onto the berm several times during its progress from Marion, but he attributed such swaying to the force of the wind and not to any act upon his part.

The four occupants of the automobile who survived the collision testified, but none of them testified as to the manner in which the automobile was operated from the time it swerved back onto the paved portion of the highway until it arrived at the place of collision. None of them noticed that the defendant had swerved the car from the paved portion of the road onto the berm immediately preceding the collision with the bridge, and none of them saw the bridge with which the automobile collided.

The testimony as to the speed of the automobile subsequent to its swerving back upon the paved portion of the highway was given by one Flowers who had passed it going in the opposite direction, and who came back to the place of collision after it occurred. He testified further as follows:

"41. Did you see and observe any tire marks on the side of the road? A. You mean off the edge of the berm?

"42. Yes sir. A. That is right.

"43. Will you please describe these? A. As near as I can describe them for now, they were in to the gravel, gradually back and then right straight.

"44. Approximately how far back of the bridge did they start? A. Oh, to my knowledge I would say it was better than 100 feet back, or more."

Considering all the above facts, there is nothing tending to prove such conduct on the part of the defendant "as manifests a disposition to perversity," or that the defendant knew that his conduct would "in all common probability result in injury," or the doing of any act "with specific intent to injure his passenger," or "the intentional execution of a wrongful course of conduct," or "intentional failure to do something which he knows should be done in connection with his operation of his automobile," except so

far as defendant's conduct in swerving the car off and onto the paved portion of the highway for the apparent purpose of jarring and awakening one of his guest passengers may be so considered.

The evidence tends to prove that at the time of and immediately preceding the collision the defendant was negligent in operating his automobile at an excessive rate of speed and in failing to keep a lookout, and that such negligence was the proximate cause of the injuries sustained by plaintiff, but it does not tend to prove that the defendant was guilty of either wanton or wilful misconduct.

This case is distinguishable from the case of *Kennard, a Minor,* v. *Palmer, a Minor,* 143 Ohio St., 1, 53 N. E. (2d), 908, in that the collision in that case occurred upon a highway having numerous curves and being rough in places, and the perversity of the operator of the automobile continued up to the time of the collision, whereas in the instant case the highway on which the collision occurred was neither curved nor rough in places, and the perversity of conduct of the operator of the car ceased prior to the collision and was not a proximate cause thereof.

The instant case is also distinguishable from the case of *Thomas* v. *Foody,* 54 Ohio App., 423, 7 N. E. (2d), 820, in that the operator of the automobile in that case persisted, over the protests of his guest passenger, in driving at an excessive rate of speed around curves, whereas in the case at bar the operator of the automobile was driving on a straight road and desisted from operating his automobile in a manner to which his passengers objected.

The instant case is also distinguishable from the case of *Morrow* v. *Hume, Admx.,* 131 Ohio St., 319, 3 N. E. (2d), 39, in that the evidence in that case showed excessive speed in "an unusually dangerous situation,"

and that the operator of the car drove on ''without any care whatever, and without slackening his speed, in utter heedlessness of his guest passenger's jeopardy,'' whereas the facts in the case at bar do not show an unusually dangerous situation, or that the operator drove without any care whatever in utter disregard of his guest passengers' jeopardy.

For the reasons mentioned, the trial court erred in not sustaining defendant's motion for a directed verdict made at the close of plaintiff's evidence and renewed at the close of all the evidence and also erred in not sustaining defendant's motion for judgment notwithstanding the verdict. For these errors the judgment is reversed, and this court, rendering the judgment the trial court should have rendered, enters final judgment in favor of the defendant and remands the cause to the Common Pleas Court for execution.

*Judgment reversed.*

MIDDLETON, P. J., concurs.

JACKSON, J., dissenting. The writer of this opinion is unable to agree with the majority of the court that error obtained in the trial of the cause wherefore final judgment should be rendered by this court.

Under the pleadings, the issues are clearly made that recovery, if any, must be had by virtue of Section 6308-6, General Code.

The amended petition pleads in the alternative that the defendant was guilty of wilful or wanton misconduct, and the issues were made up by the answer of the defendant. The amended petition was not attacked as to the pleading in the alternative, and the evidence was submitted in accordance with the issues as defined in the amended petition and the answer of the defendant.

Therefore, the verdict of the jury in favor of the plaintiff must have been based either upon wilful misconduct, wanton misconduct, or both.

No prejudicial error intervened during the submission of the evidence and the charge of the court.

As in nearly all litigated matters, the evidence shows a conflict as to what actually happened. The jury understood plainly the import of the issues, the evidence, and the charge of the court. The jury showed its understanding rather conclusively by its answers to the three interrogatories submitted.

The majority of this court finds as a matter of law that neither wilful nor wanton misconduct obtained and, therefore, that final judgment must be rendered.

If we consider the evidence most favorable to plaintiff, which is the correct rule, the court acted properly when it denied the motion of the defendant for judgment at the close of the evidence of the plaintiff and at the end of all the evidence.

In consideration of the entire record, the cause was properly submitted to the jury, and the jury having found in favor of the plaintiff, judgment was, and should have been, rendered upon the verdict of the jury.

As I find no error of a prejudicial nature in any of the matters complained of, I believe the judgment of the Common Pleas Court should be affirmed and the cause remanded for execution.