Stewart, J.
The basis for defendant’s claim that she was entitled to a directed verdict in the trial court is that Marfia was a guest of Gist, the owner and operator of the automobile in which such decedent was riding when she met her death, and that, therefore, defendant is not liable for the damages arising from Marfia’s death. Accordingly, other than the question as to willful or wanton misconduct, there are presented to us two questions: One, whether the conversation between Lanzendorfer and Marfia was legally admissible in evidence, and, two, if it was admissible, whether there was sufficient evidence to be submitted to the jury upon the question of establishing such a contractual arrangement for the transportation of Marfia from Cardington to Mansfield as to constitute her a paying passenger rather than a guest of Gist.
Section 6308-6, General Code (Section 4515.02, Revised Code), reads as follows:
“The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, *103 owner or person responsible for the operation of said motor vehicle.”
Defendant earnestly contends that Lanzendorfer’s statements to Marfia should have been rejected as hearsay evidence. If such statements had been rejected, it is obvious that there would have been no evidence to show the status of Marfia other than that of guest in the automobile at the time of her death.
The general rule applicable to such evidence is stated in 20 American Jurisprudence, 521, Section 608, as follows:
“In the absence of statute, the death of a declarant is not in itself a ground for invoking an exception to the hearsay rule which renders unsworn statements inadmissible in evidence. Under certain circumstances, however, statements made by a person since deceased are admissible under an exception to such rule, based on the ground of necessity. It has been asserted that while declarations of deceased persons are always to be received with caution, the conventional objection that evidence consisting of the alleged declarations of deceased persons is so easily fabricated that it is open to suspicion concerns the weight, rather than the competency, of such proof. On principle, such declarations are not admitted as of necessity if other competent evidence is available. A condition imposed generally in admitting the declarations of deceased persons in evidence is that they appear to have been made without motive on the part of the declarant to state an untruth. Another condition which has been imposed in admitting such declarations is that the declarant be shown to have had knowledge of the facts stated.
“If a declarant is dead, the general rule is that statements made by him against his pecuniary or proprietary interest are admissible even as between third parties.”
It might be claimed in the present case that Lanzen *104 dorfer’s statement that she was going to pay for Gist’s gasoline was against her pecuniary interest, and thus the statement was admissible. However, A would not be admissible as showing any contractual arrangement with Gist except if he heard i't, it was against his pecuniary interest and he failed to deny it. It is difficult to see in what way the statement was against the pecuniary interest of Gist, although it might be a jury question as to whether he heard it. However, assuming that all the conversation was admissible, the question still remains as to whether it was sufficient in law to make the guest statute inapplicable. This court has considered in numerous cases the question as to what constitutes a contract so as to except a particular transaction from the application of that statute. A recent full discussion of this question is found in the case of Hasbrook v. Wingate, 152 Ohio St., 50, 87 N. E. (2d), 87, 10 A. L. R. (2d), 1342. The first four paragraphs of the syllabus read as follows:
“1. A person seeking to recover from a motorist for injuries suffered because of the latter’s negligent operation of the car while the former was riding with him has, under Section 6308-6, General Code, the burden of showing that the rider paid or agreed to pay for his transportation.
“2. Although a contract or arrangement for the transportation of a ‘passenger’ may be express or implied, no implied contract or obligation having the effect of increasing the risk of liability of the motorist by reason of a ‘passenger’ status may come into operation by reason of the mere payment of a small sum, unless such payment is made under such facts and circumstances as raise an inference of the acquiescence of the motorist in the assumption of such increased risk of liability.
“3. Where, in the carrying of a rider, a motor vehicle’s direct operation tends to promote the mutual *105 interests of both the rider and driver, thus creating a joint business relationship between them, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a ‘passenger’ and not a ‘guest’; but if the carriage confers a benefit only on the rider and no benefit other than such as is incidental to hospitality, good will or the like is conferred on the driver, the rider is a ‘ guest. ’
“4. The test whether a passenger status existed at the time of an accident resulting in an injury to the passenger is the existence of the right of the motorist host to recover in an action at law the reasonable or agreed value of the transportation furnished. ’ ’
That case established the principle that the burden of proof is upon the one seeking to recover for injuries or death suffered by a person while riding in another’s automobile to establish that such person was a paying passenger rather than a guest; that the status of a paying passenger may not come into being by mere payment of a small sum or the furnishing of gasoline, unless such payment or furnishing is made upon the basis of a contractual relationship with the owner or driver or a relationship where the rider renders a benefit service to the driver which is primarily for the attainment of some objective of the latter; that there must be such a relationship as will give the driver a right to recover in an action at law the reasonable or agreed value of the transportation service; and that the transportation must confer a benefit on the owner or driver beyond that incidental to hospitality or social good will.
One of the reasons urged as to why there was a contractual arrangement between Lanzendorfer and Gist for the benefit of Marfia is the claim that it was part of th,e employment contract between Lanzendorfer and *106 Marfia that the employer should furnish transportation to Marfia between Cardington and Mansfield. Both plaintiff and the courts below assumed that there was testimony which might show such an arrangement. We are of the opinion that there was no testimony of any kind in the record from which such an arrangement could even be inferred. The only evidence adduced in respect to this matter was that of Nellie Birmelin, the mother of Marfia, which is as follows:
"Q. And she again went to work for Catherine Lanzendorfer on August twenty-eighth the Monday before her death?
“Mr. Green: We object, unless she knows.
"Q. Do you know that is a fact ? A. That is a fact.
U # # *
“Q. And do you know what she earned in working for Catherine Lanzendorfer the week before she met her death? (To which counsel for defendant objected and the court sustained the same.)
“Q. Have you seen Phyllis receive her pay from Catherine Lanzendorfer?
“Mr. Green?: When?
“A. On Tuesday night of that week.
“Q. That is the first Tuesday prior to her death, is that right? A. That is right.
“Q. WTiere was that? A. In my home.
“Q. And what did you see there? A. She gave her five dollars for that night’s work.
“Q. And who brought Phyllis home that night? A. Catherine Lanzendorfer.
“Q. In whose car? A. Her own.
( C # * #
"Q. And that week prior to her death did she work each evening at Lanzendorfer’s?
"Mr. Green: We object unless she knows.
"A. She left to go to work every night. ’ ’
The only inference with reference to compensation *107 that can be gathered from that testimony is that Marfia received five dollars for her night’s work. The fact that Lanzendorfer took her home is no more proof that she was obligated to do so than the fact that Brake took Marfia home on Monday night raises any inference that he was employed by Marfia’s employer to do so. The evidence that Lanzendorfer told Marfia that she had arranged for Gist to take Marfia home and that Lanzendorfer was going to pay for Gist’s gasoline falls far short of proving a contractual arrangement for Marfia’s benefit, which would make the guest statute inapplicable. It is a matter of common knowledge that very frequently one who is a guest in an automobile upon a long ride will pay for the gasoline as a mere reciprocal favor for the pleasure and accommodation of the ride.
In fact, in the Hasbrook case, supra, where recovery was denied, the rider in that case paid the owner of the car small sums of money when he bought his gasoline. The car owner drove the rider to work each day, and yet we held that the payment of that small sum was not sufficient to change the guest status into one of a paying passenger.
Assuredly, in the present case, no benefit to Gist was shown by a statement by Lanzendorfer that she was going to pay for the gasoline, for the reason that if he had come back to Cardington instead of being killed on the way to Mansfield he would have had the same amount of gasoline which he had before starting and would have been out the wear and tear on his car. There was no benefit to him except the social companionship and benefit of driving the three women to Mansfield. Then too, as events showed, Lanzendorfer evidently intended to pay for Gist’s gasoline not only for the transportation of Marfia but likéwise for that of herself and Wesson. Where they were going or what their plans were after they reached Mansfield will never be known. In the present case we have *108 three women whom Gist was to drive to Mansfield. He received no compensation, but there was a statement that one of the women intended to pay for the gasoline he used. Under such circumstances, there was no pecuniary benefit to Gist outside of reciprocal generosity and the pleasure of the company of the women, and assuredly Gist would have had no right of action at law to recover any reasonable or agreed value of the transportation furnished. The circumstances would be entirely analogous if Lanzendorf er had said: ‘ ‘ Gist is going to. take us to Mansfield as his guests and so 1 want the drinks and the food to be on the house.”
Under the Hasbrook case, supra, considering all the evidence in the present case in its most favorable light to plaintiff and conceding that if a contract for Marfia’s transportation had been made by her employer it would have removed Marfia from the guest status just as effectively as though she had made the contract herself, we are of the opinion that there was no evidence in this case justifying its submission to the jury. See, also, Ward v. Barringer, 123 Ohio St., 565, 176 N. E., 217; Dorn, Admr., v. Village of North Olmsted, 133 Ohio St., 375, 14 N. E. (2d), 11; Duncan v. Hutchinson, 139 Ohio St., 185, 39 N. E. (2d), 140; Miller v. Fairley, 141 Ohio St., 327, 48 N. E. (2d), 217; Vest, a Minor, v. Kramer, 158 Ohio St., 78, 107 N. E. (2d), 105.
There is considerable difference of opinion as to the desirability of the guest statute and as to whether its purpose in preventing collusive claims against insurance companies and increasing the risk of liability of a motorist who is a host to a guest in his car outweighs the fact that honest claims which could otherwise be asserted are prohibited. However, the guest statute was not of judicial origin, it is a legislative enactment, and as long as it exists courts must abide by its terms and be governed by its provisions.
Plaintiff has cross-appealed in the present case, *109 complaining of the error of the trial court in refusing to submit to the jury the question whether Marfia’s death resulted from willful or wanton misconduct on the part of Gist. The Court of Appeals affirmed the trial court’s action in this respect. Whether the trial court was in error must depend upon the evidence adduced by plaintiff since defendant offered no testimony. Plaintiff’s evidence consists of the testimony of the driver of a truck which was following Gist’s car at the time of the collision, the driver of the truck involved in the collision and a patrolman who was present near the scene of the accident and who arrived at the site shortly thereafter. There was no testimony from any of these witnesses that Gist was driving at a speed greater than 40 miles per hour. There was testimony that his car slowed down, picked up speed, swerved across the road and then came back into its right lane shortly before the collision. There was evidence that it was raining and the blacktop of the road was wet and slippery, although there was also evidence to the contrary. On these facts plaintiff contends that Gist was guilty of willful or wanton misconduct, and that there should be a recovery even if this court should hold that Marfia was a guest in Gist’s automobile. Excessive speed in the operation of a car, if a maximum speed of 40 miles per hour should be considered excessive, is not of itself sufficient to constitute willful or wanton misconduct. Akers v. Stirn, 136 Ohio St., 245, 25 N. E. (2d), 286.
This court has several times defined willful or wanton misconduct.
In Tighe, a Minor, v. Diamond, 149 Ohio St., 520, 80 N. E. (2d), 122, the third and fourth paragraphs of the syllabus read:
“3. ‘Willful misconduct’, as used in the Ohio guest statute, Section 6308-6, General Code, and in the Ohio minor automobile operator’s responsibility statute, Section 6296-10, General Code, implies an intention or *110 purpose to do wrong, an intentional deviation from clear duty or from a definite rule of conduct, and not a mere error of judgment.
“4. ‘Willful misconduct’ on the part of a motorist, within the meaning of the Ohio guest statute, Section 6308-6, General Code, and the Ohio minor automobile operators responsibility statute, Section 6296-10, General Code, is either the doing of an act with specific-intent to injure his passenger or, with full knowledge of existing conditions, the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of such conduct.”
In the case of Helleren, Admx., v. Dixon, 152 Ohio St., 40, 86 N. E. (2d), 777, paragraph one of the syllabus reads:
“Within the meaning of Section 6308-6, General Code, wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (Universal Concrete Pipe Co. v. Bassett, 130 Ohio St., 567, approved and followed.)"
In the Helleren case the facts are fairly similar to those in the present case, although in our opinion the facts bearing upon willfulness or wantonness are stronger than those in the present case. Since every person in Gist’s car was instantly killed in the accident, we are required to guess as to what actually took place and what Gist was doing. The driver of the truck which was following him guessed from Gist’s *111 slowing down and then going faster that he was trying to keep the truck driver from passing him. If the road was wet and slippery, it is possible that Gist’s car was skidding somewhat as it went along. Another good guess would be that, since all the occupants, including Gist, had been sitting around a bar drinking, Gist may have become drowsy from time to time and thus let his automobile get out of its lane of traffic. There is certainly no evidence of any perverse or intentional wrongful conduct or that Gist realized that his actions in driving his car would in all common probability result in injury. For some distance immediately before the collision, Gist’s automobile had been running in its own lane. We cannot presume that Gist intended to commit suicide or to murder his guests. In fact, the presumption is to the contrary.
We are of the opinion that the trial court did not err in refusing to submit the question of willful or wanton misconduct to the jury.
The judgment of the Court of Appeals is affirmed, so far as it relates to plaintiff’s cross-appeal, and is reversed, so far as it affirms the judgment of the Court of Common Pleas refusing instruction to the jury to return a verdict for defendant.

Judgment accordingly.

Weygandt, C. J., Middleton, Taet, Hart, Zimmerman and Lamneck, JJ., concur.