DERINGER, ADMR., APPELLANT, *v.* CONNER, APPELLEE.

(No. 276—Decided December 28, 1959.)

*Messrs. Bowers & Bowers,* for appellant.
*Messrs. Schuler & Miller,* for appellee.

McCLINTOCK, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Holmes County. We will refer to the parties as they were designated in the court below, to wit, Walter L. Deringer, administrator, as plaintiff, and Denver Roy Conner, as defendant.

Plaintiff filed an amended petition, as administrator of the estate of Denver Leroy Deringer, deceased, and for his cause of action against the defendant, Denver Roy Conner, says that he is the duly appointed, qualified and acting administrator of the estate of Denver Leroy Deringer, deceased, and that the defendant is a resident of R. R. No. 1, Killbuck, Ohio, his residence being in Holmes County.

The plaintiff claimed that the decedent was a guest in an automobile driven by the defendant and that the driver of the automobile was involved in an accident from which plaintiff's decedent died.

To this petition the defendant filed an answer in which he admits that plaintiff's decedent was riding as a guest and passenger in an automobile driven by him. Further answering, defendant denies each and every allegation in said petition contained.

The cause came on for hearing and the court below instructed the jury to render a verdict for the defendant, and the jury thereupon rendered a verdict for the defendant.

A motion for new trial was filed by the plaintiff and the same was overruled by the court below, and plaintiff thereafter appealed to this court on questions of law and for his assignments of error alleges that the court below erred in directing a verdict for the defendant and in the overruling of a motion for new trial.

There were two motions filed by the defendant to dismiss this appeal, claiming, first, that the plaintiff failed to file his brief and assignments of error within 20 days after the filing of the bill of exceptions herein, as required by Rule VII of our court, and secondly that the bill of exceptions was never filed in the Court of Appeals after it was allowed by the trial judge and transmitted back to the clerk of the trial court.

For authority on these questions we cite *Pickens, Jr.,* v. *Swan,* 106 Ohio App., 231:

"The filing of a bill of exceptions in the Court of Appeals is not a jurisdictional requirement, and where, through inadvertence, the clerk of courts fails to file a bill of exceptions pursuant to precipe, there is good cause shown for the failure to file the bill of exceptions within rule, and the appeal will not be dismissed for failure to file a bill of exceptions within rule."

However, the bill of exceptions was eventually filed within time in the Court of Appeals, inasmuch as the clerk complied with the rules of our court. For the reasons herein stated, both motions are overruled.

The facts in this case are briefly as follows, as shown by the record.

The only evidence presented as to the speed of the vehicle was a statement of the defendant given to the deputy sheriff after the accident in which the defendant stated that he was going approximately 70 miles per hour.

There was some evidence introduced as to skid marks being on the road, along side of the road, and along the bank at the side, but no expert testimony was presented to attempt to prove the speed of the automobile by the width, density, etc. of such skid marks.

The evidence introduced by the plaintiff with respect to the nature of the curve is as follows: Deputy Dale Gamertsfelder was called as a witness by the plaintiff, and nothing was introduced with respect to the curve, in the direct examination. On cross-examination, the following questions and answers were given:

"Q. What type of road is that down there? A. Blacktop.

"Q. How wide is the road? A. You mean the pavement, the blacktop?

"Q. Yes? A. Nineteen feet, nine inches.
"* * *

"Q. What was the road contour itself? Was it curvey or straight? A. Straight."

The witness was questioned by the court as follows:

"Q. Are you able to state the direction of the road south of this point of the accident or collision or whatever you might call it, the direction of that road whether it was a straight road south or [sic] it or otherwise? A. There is a curve south of it.

"Q. Do you know where the defendant lives, are you acquainted with his home? A. Yes.

"Q. Between that curve you referred to and his home, state whether or not the road is straight and level or either? A. As I recall it's straight."

The plaintiff called the defendant for cross-examination and the following evidence was introduced.

"Q. Between the curve and your home there is a straight and level road is there not? A. Yes, straight.

"Q. And you knew the curve? A. Yes.

"Q. And you knew you were approaching this curve? A. Yes. It was a slight curve."

This is all the evidence that was introduced in the case with respect to a curve.

The evidence introduced by the plaintiff with respect to the condition of the berm is as follows: In the testimony of Dale Gamertsfelder, deputy sheriff, no evidence was introduced on direct examination. On cross-examination of Deputy Gamertsfelder, is the following:

"Q. What was the weather condition at this time? A. Dry.

"Q. What was the condition of the road itself? A. Dry.

"Q. What were the conditions of the berms along the road? A. I don't recall. It isn't on the report.

"Q. What was the nature of the berm along the edge of the road where it was off? A. Gravel.

"Q. Was there any wet spots there? A. I don't remember any.

"Q. Were there any soft spots there? A. The reports shows none.

"Q. You had an opportunity to observe the berm along the road did you? A. Yes.

"Q. Was it any different from the usual berm along the road? A. No."

There was no evidence in the direct examination by the plaintiff of any of his witnesses introduced with respect to the condition of the berm. On the cross-examination of Harold Brillhart, the following evidence was obtained:

"Q. Did you have occasion to observe the berm of the road? A. I observed it, yes.

"Q. What was the condition of the berm? A. I would say good."

And, on cross-examination of the plaintiff, the following evidence was introduced:

"Q. Will you describe the condition of the berm? A. Well it was partly gravel and some grass.

"Q. Was the grass dense at this point? A. Not too dense."

As to the law of this case we cite Section 4515.02 of the Revised Code:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, resulting from the operation of said motor vehicle, while such guest is being transported without payment therefor in or upon said motor vehicle, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle."

We cite also *Helleren, Admx., v. Dixon,* 152 Ohio St., 40:

"1. Within the meaning of Section 6308-6, General Code, wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (*Universal Concrete Pipe Co. v. Bassett,* 130 Ohio St., 567, approved and followed.)

"2. In an action against the operator of an automobile for injuries to or death of a nonpaying guest, where there is no substantial evidence tending to prove wilful or wanton misconduct of the defendant, the trial court should grant such defendant's motion for a directed verdict."

Also, *Laughlin v. City of Cleveland,* 168 Ohio St., 576:

"1. Where, in an action to recover damages resulting from an automobile accident, the defendant moves for a directed verdict at the conclusion of plaintiff's case, and the trial court determines that the plaintiff has failed to prove a prima facie case of negligence, *i. e.,* that the evidence introduced by plaintiff is insufficient to support a finding of negligence on the part of the defendant, it is the duty of the trial court to direct a verdict for the defendant. (*City of Cleveland v. Keah,* 157 Ohio St., 331, followed.)

"2. The mere happening of an accident gives rise to no presumption of negligence, and, ordinarily, an inference of negligence can arise only upon the direct proof of some fact from which such inference can be reasonably drawn; it can never

arise from mere guess, speculation, or wishful thinking. (*Parras* v. *Standard Oil Co.*, 160 Ohio St., 315, followed.)

"3. In a negligence action, where the plaintiff has the burden of introducing sufficient evidence to support a finding of negligence on the part of the defendant, such burden may not be overlooked by the court in considering a motion for a directed verdict, made by the defendant at the close of plaintiff's case, merely because of the court's duty to construe all the evidence and fair inferences therefrom in the plaintiff's favor."

Also, *Kitchens* v. *Duffield*, 149 Ohio St., 500:

"1. Section 6308-6, General Code, commonly called the 'guest statute,' relieves the owner or operator of a motor vehicle from all liability for the injury or death of a gratuitous guest being transported in such motor vehicle, resulting from the operation thereof, unless the injury or death is caused by wilful or wanton misconduct in the operation of the vehicle."

The guest statute was passed by the Legislature to prevent claims of a guest passenger except in the case of wilful and wanton misconduct.

We cite *Akers* v. *Stirn*, 136 Ohio St., 245:

"1. Excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness. (*Morrow* v. *Hume, Admx.*, 131 Ohio St., 319, approved and followed.)"

Also, *Cousins* v. *Booksbaum*, 51 Ohio App., 150:

"1. 'Wanton misconduct,' within the purview of Section 6308-6, General Code, is proven only when the jury concludes, by a preponderance of the evidence, that the defendant failed to exercise *any* care."

Also, *O'Rourke, Admx.*, v. *Gunsley*, 154 Ohio St., 375:

"1. Under the provisions of Section 6308-6, General Code, the operator of a motor vehicle is not liable for loss or damage arising from injuries to or the death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator."

Also, *Miljak* v. *Boyle*, 93 Ohio App., 169:

"1.While wantonness is essentially an attitude of mind and imparts to an act of misconduct a tortious character, such men-

tal state is to be determined from the acts of the wrongdoer. When, notwithstanding his conscious and timely knowledge of an approach to unusual danger and of common probability of injury to others to whom a duty of care is owing, he proceeds into the presence of such danger with indifference to consequences and with absence of all care, then he has manifested a disposition to perversity.

"2. A disposition to perversity, standing alone, is not sufficient to establish wanton misconduct."

In conclusion, from a careful consideration of the record before us, we find no evidence of wilful or wanton misconduct and for the reasons herein stated, the judgment of the Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

PUTNAM, P. J., and McLAUGHLIN, J., concur.