Bell, J.
Construing the evidence most favorably to the *168 plaintiff, as must be done where defendant’s motion for directed verdict is sustained, the essential facts are as follows:
Plaintiff’s decedent, Ralph Gene Blevins, along with three other men, was a passenger in a 1950 Oldsmobile being driven by the defendant in an easterly direction on the Ohio Turnpike in Wood County, Ohio, on Sunday, February 5, 1956. Although there was testimony that the group had done some drinking prior to riding onto the turnpike, and partially filled bottles of beer and one of gin were found among the debris of the wreck, there is no allegation in the petition and no evidence in the record that the defendant was intoxicated.
Prior to entering defendant’s automobile, Blevins and his companions, including the defendant, had been riding in the automobile of one Daly, just “driving around * * * telling jokes and talking about old times.” They had stopped at a tavern to play pool, and when Daly had to leave for an appointment they transferred to the defendant’s car.
Shortly before 7:00 p. m., defendant drove onto the turnpike at the Maumee interchange and headed in an easterly direction. He gradually increased the speed of the automobile, and, upon reaching a speed of about 70 miles an hour, defendant and Blevins, who with one other occupied the front seat, started what is described as a “count-down,” i. e., calling out the speed at each five-mile-an-hour interval. This continued until the automobile reached a speed of 110 miles an hour, which speed was maintained for some distance.
Two witnesses testified that during this period they observed spots of ice on the highway and snow piled along the edges of the road. (These witnesses admitted on cross-examination that they had lied in earlier statements made to a police investigator and an insurance investigator in a claimed effort to avoid trouble for the defendant and themselves.)
While traveling at 110 miles an hour, the occupants of the car detected a burning odor and stopped the car to inspect it. Finding nothing wrong except possible overheating which necessitated their pushing the car to start it again, they reentered the automobile and continued in' an easterly direction.
The testimony indicated that some of the occupants of the car admonished the defendant to “slow down.” As one wit *169 ness put it: “I told him to drive slow, that he proved his point about getting on the turnpike to see how fast the car would go. ’ ’ The defendant again increased the speed to 90 miles an hour and while traveling at that speed turned the car from side to side in á zigzag fashion. (Here again, and for the same reason, two witnesses admitted they lied in previous statements when they said that defendant was driving 60 to 65 miles an hour.) While proceeding in this fashion, the automobile skidded on a patch of ice, caromed off a guardrail, turned over and came to rest in the median strip of the turnpike. Blevins died as a result of the accident.
The defendant, called by the plaintiff as upon cross-examination, denied having seen any ice prior to the accident (he admitted the presence of snow as close as one foot from the edge of the road), denied zigzagging, and testified that his speed at the time of the accident was 65 miles an hour. He admitted the prior speed of 110 miles an hour and admitted to a realization that such speed was highly dangerous.
Since no question is raised here indicating that plaintiff’s decedent was anything but a guest of the defendant, the sole question before us is whether the facts as outlined above and the fair inferences which may be drawn from them constitute a prima facie case of wanton or willful misconduct under the Ohio guest statute.
The definition of wanton misconduct most often referred to is that which appears as follows in paragraph two of the syllabus in Universal Concrete Pipe Co. v. Bassett, 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646:
“Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury.”
Many of the same elements appear in the following oft-quoted definition of willful misconduct in paragraph four of the syllabus in Tighe, a Minor, v. Diamond, 149 Ohio St., 520, 80 N. E. (2d), 122:
“ ‘Willful misconduct’ on the part of a motorist, within the *170 meaning of the Ohio guest statute, Section 6308-6, General Code, and the Ohio minor automobile operators responsibility statute, Section 6296-10, General Code, is either the doing of an act with specific intent to injure his passenger or, with full knowledge of existing conditions, the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of such conduct.”
Stating the definitions may be done with relative ease now, although they were not evolved without some severe growing pains and some false starts. Fitting the facts of a particular case into one or the other of the definitions, however, poses a more difficult problem. White v. Harvey, Admr., 170 Ohio St., 262, 163 N. E. (2d), 898; Birmelin, Admx., v. Gist, Admx., 162 Ohio St., 98, 120 N. E. (2d), 711; Cunningham, a Minor, v. Bell, 149 Ohio St., 103, 77 N. E. (2d), 918; Helleren, Admx., v. Dixon, 152 Ohio St., 40, 86 N. E. (2d), 777; Jenkins v. Sharp, 140 Ohio St., 80, 42 N. E. (2d), 755.
It has long been the rule in Ohio that excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of ivantonness. Morrow v. Hume, Admx., 131 Ohio St., 319, 3 N. E. (2d), 39; Akers v. Stirn, 136 Ohio St., 245, 25 N. E. (2d), 286.
Although the bald statement that “wantonness can never be predicated upon speed alone” is taken verbatim from the opinion in Morrow v. Hume, supra, such statement must be considered along with the following qualifying language which follows it:
“ * * * but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person’s jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another’s safety may amount to wantonness.”
*171 The state of mind of the driver of an automobile, being subjective, must be determined from the circumstances that transpired before and at the time of the accident. The defendant here and his companions were on a lark, purposeless except to satisfy the defendant’s curiosity as to the top speed at which his automobile could be driven. To that end, he chose a superhighway, after dark on a winter evening. He had full knowledge of snow along the highway as well as the likelihood of water from melted snow having run onto the highway and frozen. Although temperatures during the day had been slightly above the freezing point, even one whose purpose is inane and useless must be accorded sufficient intelligence to realize that during the first week in February in Ohio the likelihood of the temperature dropping at the onset of darkness from slightly above freezing to below freezing is well within the realm of probability.
Although defendant denied the knowledge of actual ice on the highway, there is evidence in the record, that the jury was entitled to believe, that there was ice and that it was called to defendant’s attention. The same is true of the evidence of defendant’s zigzagging tactics as he drove at a speed of 90 miles an hour.
There are some members of this court who are willing to say that, under such circumstances, the driving at a speed of 110 or even 90 miles an hour is wanton misconduct as a matter of law. But to the majority of the court the evidence favorable to plaintiff shows the presence of all the elements essential to maintain the affirmative of the issue of wanton misconduct and raises, at least, a question upon which reasonable minds might well reach different conclusions.
As to other errors assigned by plaintiff, we find none prejudicial to her.
The judgment is reversed, and the cause is remanded to the Court of Common Pleas for further proceedings in accordance with law.

Judgment reversed.

Weygandt, C. J., Zimmerman, Taft, Matthias and Peck, JJ., concur.
Herbert, J., dissents.