# CHARLESTON.

LORD & McCRACKEN v. HENDERSON, *et al.*

Submitted January 21, 1909. Decided March 16, 1909.

1. ASSUMPSIT, ACTION OF—*Recovery in Assumpsit*—*Pleading.*
   Where a contract, though in writing, has been fully executed,

and nothing remains to be done by defendants under it except payment to plaintiffs of the price stipulated for the work and labor done by them under the contract, in an action of *assumpsit* to recover the same, a special count on the contract is unnecessary; recovery may be had on the common counts in *assumpsit,* and the bill of particulars filed therewith. (p. 324.)

2.   APPEAL AND ERROR—*Exclusion of Evidence—Review.*
    This Court will not reverse a judgment of the circuit court, for sustaining objections to questions propounded to a witness on the trial, unless it affirmatively appears from the record what the answers of the witness thereto would have been, or it is shown what was proposed to be proven by the witness in response to the questions, and that the party complaining has been prejudiced by the rulings of the court. (p. 325.)

3.   TRIAL—*Motion to Exclude Evidence—Waiver of Objection.*
    If at the close of plaintiffs evidence in a trial before a jury, defendants move to exclude all of plaintiffs evidence relating to certain specific matters in controversy or items in the bill of particulars filed, and if after their motion has been overruled defendants proceed with the trial and offer evidence on the same matters in issue, they will be deemed to have waived their motion to exclude, and the rights of the parties must then be tested by reference to all the evidence in the case. (p. 326.)

Error to Circuit Court, Randolph County.

Action by Lord & McCracken against S. S. Henderson and others.   Judgment for plaintiffs, and defendants bring error.

*Reversed.*

TALBOTT & HOOVER, for plaintiffs in error.

W. B. MAXWELL, for defendants in error.

MILLER, PRESIDENT:

In an action of *assumpsit,* on the common counts and a special count, with bill of particulars, the plaintiffs obtained a verdict and judgment against defendants for eight hundred and seventy-five dollars.   In the special count a contract in writing, between plaintiffs and defendants, dated November 7, 1903, was alleged, whereby, in consideration of the prices stipulated to be paid them therefor, the plaintiffs contracted with defendants to pile, peel, properly cure and load on cars, according to railroad regulations, all the merchantable bark from green hemlock timber standing on lands of the defendants and to be designated by

them; and to cut into suitable log lengths all the merchantable saw timber on said land from which bark could be peeled, and to deliver said logs either at convenient places for loading at the railroad of the defendants, or in a dam accessible to defendants saw mill; and also to cut, trim and deliver at defendants railroad, at a point suitable for loading same, all spruce pulp wood. The bark was to be paid for at the rate of $3.50, for every cord of two thousand pounds, the weight to be determined by the tannery weight. The logs were to be scaled by the defendants or a competent agent, by the Doyle or Scribner rule, before being sawed at defendants mill, and were to be paid for at the rate of $3.50 per thousand feet for spruce and hemlock, and $4.00 per thousand feet for hardwood logs. The pulp wood was to be paid for at the rate of $2.00 per cord of 128 cubic feet, and according to the measurements which the defendants should receive from the pulp company. In the bill of particulars filed defendants are charged by plaintiffs as follows: To cash, charged plaintiffs not received, $1,000.00; to 350,000 feet spruce and hemlock timber cut and delivered, not accounted for, at $3.50 per thousand, $1,225.00; to damage done roads, $500.00; to damage done plaintiffs by taking timber nearest dam and railroad, $200.00; to tan bark in woods and at railroad burnt by negligence of defendants, $100.00.

Early in the trial below plaintiffs in proof of the first item of their account endeavor to show by the witness McCracken, that in their statement rendered for the month of October, 1903, defendants had shown as the balance due them at that time $6,103.60, and that in the statement for the month of November, 1903, they had brought down this balance as $6,500.98, a difference of $397.38. When plaintiffs counsel asked the witness whether he could explain why defendants had made this difference against his firm, he answered, "I cannot." The motion by defendants to exclude this question and answer was overruled. Immediately afterwards, however, when plaintiffs counsel asked the witness to state when he in fact began work for the defendants under the contract and why the written contract bore date of November 7, 1903, the objection by defendants counsel thereto was sustained. And thereafter, for a time at least, the court limited plaintiffs in their evidence to transactions subsequent to that date. Later when it began to appear that the

evidence thus restricted might show an erroneous condition of the account between the parties, counsel for defendants, on cross examination of plaintiff McCracken endeavored to extend the investigation back of that date, and to show that although the contract bore date of November 7, 1903, it in fact was a mere reduction to writing of a prior verbal contract, under which the plaintiffs had been operating since about April, 1903. But objections thereto by plaintiffs counsel were sustained. The above ruling of the court on defendants motion to exclude the question and the answer thereto of the witness McCracken, relating to the difference in the balance shown in the statement of October, and that brought down in the statement of November, 1903, and the subsequent rulings of the court on the several questions propounded said McCracken on cross examination are made the subject of defendants bills of exceptions number two, three, four and five, relied on, which will be considered together.

These rulings of the court we think were based on the erroneous theory that plaintiffs were necessarily limited in their proof to the matters alleged in the special count. The allegations of the special count and the evidence on the trial show a contract fully executed on the part of the plaintiffs and that nothing remained to be done on the part of the defendants except to pay plaintiffs the balance, if anything, due them, and that the contract no longer remained executory. A special count therefore was unnecessary. The plaintiffs, if entitled to recover anything, were entitled to recover upon the common counts. *Railroad Co.* v. *Lafferty,* 2 W. Va. 104; *Railroad Co.* v. *Polly, Woods & Co.,* 14 Grat. 445; *Tunnel* v. *Mayo,* 7 Johns. 132; all cited with approval in *Bannister* v. *Coal & Coke Co.,* 63 W. Va. 502, 507. In the latter case we quote from *Tunnel* v. *Mayo, supra,* that "where the party declares on a special agreement, seeking to recover thereon, but fails altogether, he may recover on a general contract, if the case be such that, supposing there had been no special contract, he might still have recovered." We think therefore that the rulings of the court in so limiting the evidence of the parties was erroneous, and that the action of the court below overruling defendants motion to strike out, set forth in defendants bill of exceptions number two, was right.

But whether defendants were prejudiced by the ruling of the court, shown in their bills of exceptions numbered three, four

and five, and whether they are in a position to take advantage thereof, presents quite a different proposition. We do not think they were prejudiced for several reasons: First, they were the first to obtain the adverse ruling of the court, and, as a general rule, ought not afterwards be heard to complain, when the same ruling was applied to them; second, it does not affirmatively appear what the answers to the several questions propounded to the witness McCracken; objections to which were sustained, would have been. There was no proffer of counsel in either instance, to show what was proposed to be proven by the witness. Wherefore we cannot say that the court committed error. *Delmar Oil Co.* v. *Bartlett,* 62 W. Va. 700. If the witness had answered, as he likely would have done, that the transactions began prior to November 7, 1903, the result would have been to benefit or prejudice the defendant, depending on whether a larger or a smaller balance, or no balance in favor of the plaintiffs would be shown thereby. But as in the subsequent progress of the trial, all the transactions between plaintiffs and defendants seem to have gotten fairly before the jury, by the evidence of the witnesses and documentary evidence introduced, including a statement of all the accounts rendered by defendants to plaintiffs, and the tally sheets showing the scaling of the logs, we are unable to see that the rulings of the court were in any way prejudicial to the interests of the defendants.

The sixth bill of exceptions relied on relates to the testimony of plaintiff Lord, that at one time when at defendants mill he had observed the scaler employed in scaling logs make a mistake of some nine feet or more in scaling a particular log, and that not long before that this scaler had told witness that he had never known anything about scaling logs, and that witness had asked him if he was scaling the logs that were on the ways there. The court below overruled defendants motion to exclude this evidence. Defendants claim the log in question was not shown to be one that plaintiffs had cut; but plaintiffs had already offered evidence tending to show mistakes due to incompetency of scalers, and the omission on the part of defendants to scale at all some of the logs delivered by them, and the purpose of plaintiffs by this evidence was to show that defendants had incompetent men in charge of the scaling of logs, and by referring to the logs on the ways, witness was evidently pointing to logs

delivered by plaintiffs. Taken in connection with the evidence that had been and was subsequently introduced by both parties, we see no prejudicial error in refusing to exclude this testimony.

The seventh bill of exceptions relates to the motion of the defendants, made at the close of the plaintiffs testimony, denied by the court below, to exclude certain evidence of the plaintiffs. The motion was first applied, to the exclusion of the evidence relating to the number of feet claimed in the logs delivered by them, defendants claiming that the tally sheets were the best evidence thereof and that plaintiffs had not offered these in evidence; second, to the evidence of the plaintiffs as to loss of bark burned, because of want of negligence of the defendants shown in allowing the fire to escape; and third, to the evidence of plaintiffs relating to logs cut by defendants from the lands which defendants had marked out for them under their contract. This was not a motion in terms to strike out all of plaintiffs evidence but it applied to all the evidence relating to all the items in plaintiffs account, except the item of cash, charged as not having been received; but we see no reason why the general rule of waiver, announced in *Trump* v. *Coal & Coke Co.,* 46 W. Va. 238, and other cases, should not apply; for defendants, afterwards, introduced all their evidence relating to the same subject, thereby supplementing the evidence of plaintiffs.

And this brings us to the consideration of the eighth or last bill of exceptions containing the certificate of evidence and the motion of the defendants, overruled by the court below, to set aside the verdict and grant them a new trial, the only other error relied on. On this question it is practically conceded that the verdict and the judgment thereon, to the extent of $425.40 are sustained by the evidence. This concession is based upon the evidence of plaintiffs that the reports and statements made by defendants to them, from time to time, of the logs, bark and pulp wood delivered, showed them entitled to $22,472.65, and that the bill of sets-off of defendants shows, and defendants admitted, they had paid plaintiffs on account only the sum of $22,047.25, leaving a balance of $425.40. But as to the residue of the verdict and judgment, namely $449.60, it is insisted there is absolutely no evidence to support them. In determining this question we must confine ourselves to the evidence relating to the several items in the plaintiffs account filed. The

only evidence offered to support the first item is that defendants statement of October, 1903, showed debits, $6,103.60, while the statement for November following brought this balance forward as $6,500.98, an error against plaintiffs of $397.38; and that the debits shown in the November statement was $5,678.55, while this balance was brought forward in the December statement as $5,770.60, an error of $92.08; and it was claimed that another error against plaintiffs of $80.00 was shown in the defendants statement for October. The plaintiffs kept no books of account. The defendants claim to have kept accurate books of account, and to have rendered monthly statements and generally daily reports of the logs scaled and delivered, and of the bark and pulp wood delivered, which statements, with tally sheets, from the beginning of the transactions in April or May, 1903, to the conclusion by plaintiffs of their contract, were offered in evidence, and that there was little, if any, evidence showing or tending to show any objection by plaintiffs at any time to these reports and tally sheets. The bookkeepers of defendants showed that these errors relied on to support this cash item were subsequently corrected and reported to plaintiffs. Their testimony was not contradicted, and no effort is made in support of the argument here by plaintiffs counsel to show anything to the contrary, nor are we referred to any other evidence in support of this cash item. We think therefore it must be rejected for want of proof.

On the second item, 350,000 feet of spruce and hemlock timber not accounted for, we find no appreciable evidence to support it, except only in so far as it may be covered by the sum $425.40 covered by the verdict. The only other evidence relied upon to swell the quantity of logs delivered and not accounted for is certain indefinite testimony of plaintiffs and other witnesses that incompetent scalers had been at work at the mill, and that possibly in the absence of the regular scaler, some of the logs delivered at the railroad may not have been scaled at all, and that there were probably certain logs in the mill pond, separated from the main body of the logs delivered, that had not been scaled. But there was no evidence showing or tending to show as a matter of fact that any of the logs delivered by plaintiffs had not been scaled or incorrectly scaled. On the contrary, the testimony of the scalers and bookkeepers of the defendants is positive

and unequivocal that all the logs delivered by plaintiffs had been properly scaled and reported, as shown by the monthly statements and daily tally sheets furnished plaintiffs, reference being made by them in their testimony to the statements and tally sheets where particular logs supposed by plaintiffs not to have been measured, were reported and accounted for, and there was no evidence offered by plaintiffs to show the contrary, or to contradict these witnesses. It is true that the testimony of Reed, defendants bookkeeper, and that of McCracken conflict as to the quantity of logs reported and shown by these reports and tally sheets. McCracken claimed one amount, Reed another, the difference amounting to $425.40, and without this conflicting evidence there is absolutely no appreciable evidence of any character to support this second item of the account.

The third item of the account, $500.00 for damages to roads of plaintiffs, is unsupported by any appreciable evidence. The plaintiffs have failed to give in evidence a single fact showing actual damages, and justifying the jury in including anything therefor in their verdict. That some trees were cut by defendants for use in building their saw mill and making other necessary preparations for their lumbering operations is admitted, and there is some little evidence tending to show some little delay and inconvenience to plaintiffs resulting therefrom; but there was nothing in the contract providing against use of the timber by defendants, or inconveniences to plaintiffs therefrom. Defendants were obliged to have timber to build their mill and make other necessary preparations. This fact we think must have been contemplated by the parties at the time of the contract. The jury therefore was not justified by the evidence in including anything in their verdict on account of this item.

The fourth item, damages to plaintiffs by taking timber nearest the dam and railroad, is an item of the same character. Plaintiffs assume that there was some covenant or a agreement implied, that defendants were not to invade for the purposes shown the territory marked out on their land for plaintiffs operations; but in this we think they are in error. The proof is that some fifteen trees near the location of the mill, were cut down and used in the construction thereof; but there is not the slightest evidence to show that any actual damages resulted to the plaintiffs therefrom. They did not cut and deliver this timber to the plaintiffs,

and were not entitled to the price stipulated in the contract therefor; and even upon their theory there was no attempt to establish by competent evidence or any evidence whatever what profits they would have realized on this timber if they had cut it. Wherefore the jury were not justified in including in their verdict anything on account of this item.

The fifth or last item, tan bark burned in the woods and at the railroad by defendants negligence, has little, if any, competent evidence to support it. Plaintiffs estimate the amount of this bark at about two car loads. The bark did not belong to them; by the terms of the contract they were entitled upon delivery to the price stipulated for peeling, piling and curing the same. That which was in the woods, though peeled and piled, had not yet been delivered, and by the terms of the contract the measurement at the tannery was to control the amount to be paid plaintiffs. The actual amount of damages, if any, sustained by plaintiffs was left uncertain.

But whether defendants are liable for such damages depends on whether the fire causing the loss of the bark was due to their negligence. The testimony of the plaintiff McCracken is that the fire originated, to the best of his knowledge, from a house occupied by one Smith, located some four hundred yards from defendants mill, and he says he don't know what Smith was doing when the fire got started; he does not know whether it was Smith or some other person who was cleaning away the brush. He did not know what the brush was being cleared away for, but thought it might have been because the brush was piled up against the house. The plaintiff Lord says that bark was burned in the woods, and at the railroad, but he does not attempt to say by whose negligence it was burned. He does say that when cleaning up the lumber yard they would have fire during the day, that would burn all night, and that along in the night there was an unusually large fire down by the camp along the railroad where there was quite a large pile of bark that nearly burned up. He judges that there was a car load of bark at the railroad, and as he and McCracken estimated two car loads in all, one car load must have been in the woods. The defendants' evidence shows that the fire originating at the Smith house was due to the cleaning up of the yard by Smith for a little garden. Whether the burning of the bark resulted from this

cause was not known. But the uncontradicted evidence of defendants is that no claim was ever made by plaintiffs for any loss or damage for the burning of bark until the institution of this suit. We are of opinion therefore that the jury were not justified by the evidence in concluding that the burning of this bark was the result of any negligence of defendants. The evidence does not show that the fire on the mill yard caused the bark to burn along the railroad, nor that the fire at the camp was the cause thereof. Without more definite evidence as to the responsible cause of the damages the jury was not justified in including in their verdict against defendants anything for this item.

An effort is made by counsel in argument here to support the general verdict on the ground that by limiting the items in the mutual accounts between the parties to those covering their transactions subsequent to the date of the written contract a balance is shown in favor of the plaintiffs of some $5,000.00; but we do not think the verdict should be sustained on any such basis. Practically all the facts relating to all the transactions prior and subsequent to November 7, 1903, got before the jury, and inasmuch as the verdict was without evidence to support it beyond $425.40, the defendants, we think, should have a new trial, and it will be so ordered.

*Reversed.*