# CHARLESTON.

PRICE HILL COLLIERY COMPANY *v*. H. H. PINKNEY

Submitted March 18, 1924. Decided March 25, 1924.

1.   TRIAL.—*When Meaning of Jury Clearly Collectible From Verdict it Should Not be Set Aside for Want of Form.*

When the meaning of the jury can be clearly collected from the verdict, it ought not to be set aside for mere want of form in wording; and if the points in issue are substantially de-

cided, the trial court should mould the verdict into proper form. (p. 77).

2. Account Stated.—*When Account Rendered and Retained Becomes "Account Stated."*

The rule that an account rendered and retained for a long time becomes an account stated is, as a general proposition, inapplicable in Virginia and in this state, except as between merchant and merchant, and principal and agent, with mutual accounts. (p. 80).

3. Appeal and Error.—*Where Question Does Not Plainly Import Materiality of Answer, Bill of Exceptions Must Show Expected Answer.*

Where the trial court refuses to allow a question to be answered, if the question does not itself plainly import that the answer will prove a material fact, it must appear by a bill of exceptions what was proposed and expected to be proved, to constitute error apparent on the record. (p. 81).

4. Same.—*When Stronger Case Required to Reverse Order Granting Than Refusing New Trial Stated.*

The general rule that it takes a stronger case, in the appellate court, to reverse an order granting, than one refusing a new trial, must be properly confined to cases where the evidence is not only conflicting, but also where the verdict is against the weight of the evidence, and the evidence is wholly insufficient to support the verdict. (p. 82).

McGinnis, Judge, absent.

Error to Circuit Court, Raleigh County.

Action by the Price Hill Colliery Company against H. H. Pinkney. Judgment for plaintiff, and defendant brings error.

*Reversed and rendered.*

*Ashton File* and *W. W. Goldsmith,* for plaintiff in error.
*McGinnis, Maxwell & McGinnis,* and *Dillon, Nuckolls & Mahan,* for defendant in error.

Miller, Judge:

Plaintiff brought this action in assumpsit for the balance alleged to be due it from defendant on an open account. De-

fendant pleaded non-assumpit, and filed a notice of set-off and counterclaim, together with a statement of the amount alleged to be due him from plaintiff. The verdict of the jury in favor of defendant was set aside by the trial court, and a new trial was awarded plaintiff.

Some time in the month of July 1918, defendant entered the employ of plaintiff as superintendent of its coal plant at Price Hill. Plaintiff agreed to pay him for his services a monthly salary of three hundred dollars, and in addition thereto, to furnish a house, light and fuel for himself and his family. The contract on the part of plaintiff was made by its president and general manager, S. Dixon, defendant's father-in-law. Defendant severed his connection with the company about the first of August 1922. During the period of his employment by the plaintiff, defendant did not occupy a house furnished by the company, except that for a part of the time he occupied quarters in a club house maintained by it. The principal items of his claim against plaintiff are for rent, light and fuel, which defendant says he was obliged to pay out because of the failure and refusal of the company to furnish him with a house at their plant at Price Hill. He includes also an item for $132.83, "on account of expense"; and claims interest on certain monthly balances in his favor. The balance of plaintiff's account due from defendant, including an item of interest for $320.29, was $1,937.32; and defendant's claim against plaintiff, exclusive of interest, was $2,372.83.

The verdict of the jury was: "We, the jury, find no difference as between the plaintiff and defendant." The court directed the jury that they should find either for the plaintiff or for the defendant, and returned them to the jury room for further consideration. Later, the jury announced that they had not made any further finding. The court then inquired of the jurors if by their verdict they had found that the plaintiff had proved its claim of $1,937.32 against defendant, and that the defendant had also proved his claim against plaintiff in a like sum, to which all the jurors answered in the affirmative. The court thereupon reformed the verdict to read as follows: "We, the jury, upon the issues joined in this case, find that the plaintiff has proved its

claim against defendant in the amount, but we also find that the amount to which the defendant is entitled to set off under the evidence in this case is a like sum of $1,937,32, and equal to the amount to which the plaintiff is entitled herein." The court read this amended verdict to the jury, and each juror announced that the same was his verdict. Upon motion of counsel for plaintiff, the jury was polled, and each juror affirmed the verdict as amended.

Plaintiff contends that this verdict was not complete; that it does not find for either party, so that a judgment for costs could be entered thereon for either. The verdict does decide all the issues presented to the jury. The jury found that the contract was as contended for by defendant, and that his claim was equal in amount to that of plaintiff. Plaintiff's action was defeated by defendant's defense. Defendant prevailed and is entitled to costs. In *Lewis* and *Frazier* v. *Childers*, 13 W. Va. 1, it was held: "Verdicts of juries are to be favorably construed; and if the point in issue is substantially decided by the verdict, it is the duty of the court to mould it into form. When the meaning of the jury can be clearly collected from the verdict, it ought not to be set aside for irregularity or want of form in its wording."

There is no dispute that by the contract of his employment defendant was to have house rent, light and fuel, in addition to his salary. Plaintiff contends that defendant was to have one of the company's houses at the mines; while defendant says: "I understood he (plaintiff's general manager) would pay my house rent, lights and coal. I understood it was to be that or the equivalent." Mr. Dixon, President and General Manager of the company, when asked what his understanding was with respect to the house to be furnished to defendant, answered: "The understanding was that he was to have a house and coal and lights. That is the understanding with the employment of every mine superintendent, and he had the same, and the house was on the place." Question: "That is, provided he came to live there." Answer: "Yes, Sir." Question: "Would you have preferred him to live there?" Answer: "A superintendent should live on the place, and

naturally that is why the house is given." Question: "Just answer the question." Answer: "Surely, I did."

It appears that at the time the contract was entered into, defendant's wife and children were living on her father's farm, near Richmond, Virginia. She says that she came on a visit to Price Hill in August 1918, to see if there was a place she could live, because she wanted to be with her husband, but there was no house; that the house which had been built for her in 1906, when her husband was employed by the company then operating the mines now owned by plaintiff, was occupied by a family who kept boarders, and that her father said he couldn't turn them out, because the men meant money to him; that there was a four room flat over the store, which she would have been glad to have lived in, but the bookkeeper lived in it; that she then tried to secure a house at Mount Hope, but could not. She insists that she would have lived at Price Hill, if the company had furnished a suitable house. She says her father insisted that she return to his farm in Virginia, which she did. The first of October 1918, defendant's family went to Richmond, where they remained for nine months, occupying a small flat, a "doll house", Mrs. Pinkney called it, on the fourth floor of an apartment house, for which they paid a monthly rental of $45.00. The following September they removed to Beckley, about eight miles from Price Hill, where they took a four room flat, without bath, paying $33.00 a month rent. Here they lived for ten months. At the end of this time they moved into and occupied defendant's own house, which he had just completed at a cost of about twenty-five thousand dollars. Defendant and his family his wife and three children, continued to occupy his own house during the remainder of his employment with the company.

Defendant's statement of set-off and counterclaim contains items for light and fuel amounting to $245.00, which he and his wife say was actually paid out by them at Richmond and Beckley; an item of $132.83, expenses paid out by defendant in connection with his employment; rent paid at Richmond, $415.00, rent paid at Beckley, $330.00, and rent for defendant's own house at Beckley, twenty-five months at $50.00 per month, $1,250.00, making in all for rent $1,995.00. In addi-

tion to the above items, defendant claims interest on $460.00 from the first day of July 1919, on $1,780.00 from July 30, 1922, and on $132.83 from December 30, 1921.

Plaintiff's statement introduced in evidence, made up from its ledger account with defendant, consists of credits and debits in the account, with monthly balances. The credits consist of monthly salary; five items designated "bonus" or "compensation" amounting to $4,000.00; a loan of $1,000.00 by defendant to the company, and interest on the same from July 27, 1918, to October 15, 1919, $72.98; and sundry expense accounts. The debits consist of amounts paid defendant in cash, and merchandise and supplies furnished him. It appears that defendant did not at any time receive his salary in cash, but it was credited to him from month to month. This statement shows that the monthly balances were in defendant's favor until June 1, 1920, and that from that time until his employment with the company ended, they were in favor of the company.

Plaintiff contends that at various times during the four years, it rendered to defendant statements showing balances of his account at the time rendered, and that as no objection was made at the time as to the correctness of these statements, they became "accounts stated", and that defendant is now estopped to deny the true state of the account as shown by the statements rendered, at the time they were made up and submitted to him, and can not introduce new items into the account.

Plaintiff's bookkeeper testified that he rendered defendant such statements, not at stated intervals, but "some times every two or three months, and sometimes four or five," whenever Mr. Pinkney might want them or when the company thought best. The record fails to show what was contained in the statements rendered, when they were made, or whether they agreed with the monthly balances as shown by plaintiff's statement of the account introduced in evidence. Defendant admits the correctness of the items included in plaintiff's statement of the account, but contends that the statements rendered him, from time to time are not conclusive of his claim for rent, light and fuel, under his contract of employ-

ment, and that he is not estopped to assert such claim. In *McGraw* v. *Trader's National Bank,* 64 W. Va. 510, we held: "An account rendered becomes an account stated only when it has been examined by the parties, and the balance admitted, without having been paid; when paid it becomes a settled account;" and, "The rule that an account rendered and retained for a long time without objection becomes an account stated is, as a general proposition, inapplicable in Virginia and West Virginia, except as between merchant and merchant, and principal and agent, with mutual accounts." There is no evidence that defendant ever admitted the verity of the statements rendered him. The bookkeeper says that he could not recall that Mr. Pinkney ever made any objections to the statements rendered.

In support of plaintiff's theory that the statements rendered constitute accounts stated, counsel cite our cases of *Ruffner* v. *Hewlett,* 7 W. Va. 585; *Batson* v. *Findlay,* 52 W. Va. 343; *Caldwell* v. *Caperton,* 27 W. Va. 397; *Curry* v. *Lawler,* 29 W. Va. 111; *Shrewsbury* v. *Tufts,* 41 W. Va. 212; and *Chapman* v. *Salt Company,* 57 W. Va. 395. In the first case cited the account was between merchant and merchant; in the Batson case the account had been settled and a deed of trust given; in the Caldwell and Curry cases notes had been given in settlement of the accounts; and in the Shrewsbury case the account was between principal and agent. In the case of *Chapman* v. *Salt Company,* plaintiff was employed by defendant at piece work. His claim was for extra time as timekeeper of the workmen employed by defendant. The statements rendered him from time to time included items for extra work; and settlements had been made thereon and plaintiff paid in full. None of these cases are in conflict with the rule laid down in *McGraw* v. *Bank, supra.* It is admitted that the item of interest in plaintiff's final statement was not included therein until after defendant severed his connection with the company. To this extent at least the final statement did not agree with the monthly statements rendered. In view of our holding in the McGraw case, and the evidence introduced on the trial in this case, we are of opinion that defendant was not estopped to assert his claim for items not included in the

statements rendered, or in plaintiffs final statement of the account.

Plaintiff argues that defendant did not prove his items of set-off or counterclaim by a preponderance of the evidence. The burden of this argument is that he voluntarily waived his right to a house at Price Hill, and that he preferred to keep his family elsewhere, and could have had a house at the mines if he had insisted on being furnished one. As to this question plaintiff's general manager, defendant and Mrs. Pinkney were the only witnesses who testified. Their evidence is contradictory; and the jury undoubtedly resolved the doubt in favor of defendant. No objection was made to defendant's evidence as to the nature and amount of his claim; and no evidence to contradict him or his wife was offered. We can not say that the finding of the jury was not justified by the evidence, nor do we think that the trial court was justified in setting aside their findings on this question.

The rulings of the court below on certain evidence offered by defendant are assigned as error. Defendant on cross-examination was asked if it was not true that while he was employed by the plaintiff he was not given permission to take another job with another coal company at a salary of $150.00 per month. His answer that he was, was ruled out by the court. Whatever outside work the plaintiff might permit its engineer to engage in would have no bearing on his claim against plaintiff based on his contract of employment. It is said that the purpose of this line of evidence was to show the reason why defendant did not claim compensation for house rent, light and fuel. If so, the record was not made to show such fact. No further questions on this subject were asked, and no tender was made, or reason given for the introduction of evidence on this subject.

Defendant was also asked on cross-examination, if he had not during the period of his employment received from plaintiff an advancement or bonus of four thousand dollars in addition to his salary. Defendant's objection to the question was sustained. What his answer to the question would have been does not appear, and no further questions were asked. Where the trial court refuses to allow a question to be an-

swered, if the question does not plainly itself import that the answer will prove a fact material, it must appear by a bill of exceptions what was proposed and expected to be proved, else there is no error apparent. *Sesler* v. *Coal Co.*, 51 W. Va. 318

In a written opinion filed in the cause, the trial court gave as his reason for setting aside the verdict the alleged error committed in not admitting the evidence referred to above, and his opinion that the statements rendered defendant from time to time and received by him without objection or protest of any kind, constituted accounts stated.

While the general rule is that it takes a stronger case, in the appellate court, to reverse an order granting, than one refusing a new trial, this rule in its application must be properly confined to cases where the evidence is not only conflicting, but also where the verdict is against the weight of the evidence and the evidence is wholly insufficient to support the verdict. *Wilson* v. *Johnson*, 72 W. Va. 742. In this case the opinion of the trial court shows that the verdict of the jury was set aside because of supposed errors in law committed by the court on the trial, and not because the court considered the verdict to be against the weight of the evidence.

Our conclusion is to reverse the judgment below and to enter judgment here on the verdict for defendant.

*Reversed and rendered.*