RUSSELL, SR., ADMR., APPELLEE, *v.* ELKINS, ADMX., APPELLANT.*

*Motion to certify the record overruled (37102), July 5, 1961.

342

(No. 1116—Decided April 21, 1961.)

*Mr. G. A. Piacentino* and *Mr. Eugene A. Yazel*, for appellee.
*Messrs. Guthery, Harmon & Conkle*, for appellant.

MIDDLETON, J.   This is an appeal on questions of law from a judgment of the Common Pleas Court entered for the plaintiff pursuant to the verdict of a jury.   Plaintiff's action is for damages for causing the wrongful death of plaintiff's decedent which resulted from a head-on collision between an automobile in which the plaintiff's decedent was riding as a guest and one driven by the defendant's decedent.   Upon trial the jury returned a verdict for the plaintiff.   Motions for new trial and for judgment notwithstanding the verdict were filed by the defendant, and both were overruled.   The appellant sets forth as his assignment of errors the following, to wit:

1. The trial court erred in refusing to direct the verdict at the close of all of the evidence.

2. The trial court erred in refusing to grant a judgment notwithstanding the verdict.

3. The trial court erred in not granting a judgment for a new trial.

4. The trial court erred in charging the jury on Sections 4507.37; 4511.20; 4511.21; 4511.25; 4511.26 of the Revised Code of Ohio.

Plaintiff in his amended petition averred that the "defendant's decedent caused his said automobile to swerve and weave back and forth across said Kenton Avenue at a speed of 55 miles

per hour in such a manner as to have an absolute indifference to the consequences of the manner in which he was driving. That immediately and thereafter the passengers in defendant decedent's automobile admonished the defendant's decedent by asking defendant's decedent to slow down, not to swerve and weave, and to be more careful. But defendant's decedent then and thereafter paid no attention to his passengers' remarks but misconducted himself in a wanton manner by causing his said automobile to swerve and weave back and forth across said Kenton Avenue at a speed of 55 miles per hour when he well knew that to so operate his said automobile would in all probability cause injury to plaintiff's decedent.''

The record discloses that all occupants of both cars involved in the collision were killed except Evelin E. Burke, who testified as a witness. With the exception of a Mr. Needham, who testified as a witness, there were no eye witnesses to the collision. Mrs. Burke testified that, prior to the collision, she in the company of the defendant's decedent and one Junior Russell visited the night club, Club Admiral, and that she did not notice anything wrong with the defendant's decedent at the club and did not notice anything unusual in the manner of defendant's decedent's driving after leaving the club until they got on to David Street. She testified as follows:

''Q. Was there anything unusual about the operation of the vehicle on the way home, or on the way from the Club Admiral? A. No, not to me there wasn't until we got on David Street.

''Q. What happened, if anything, on David Street? A. When we got on David Street, he kept getting over on the left side of the road and I thought for a while the windshield was all clouded up. I thought that that was what was wrong, he couldn't see so good, so I wiped it off several times for him. It seemed to help. As he got closer to West Center Street, he got worse and he speeded up. He started going faster as he went around the corner on West Center and David, and me and Junior both asked him to stop and let us out of the car. He wouldn't. He just kept on going.

''Q. Do you remember anything about his speed as you crossed the tracks out there? Did he increase his speed, if you recall? A. That is what he did.

344

"Q. Mrs. Burke, I presume you have ridden in a car for a good many years, is that right? A. Oh, yes.

"Q. Can you give the jury an estimate of the speed that Mr. Elkins was going, as you say when he speeded up or went faster? A. He was doing about thirty or thirty five coming up David.

"Q. When he increased his speed, can you say how much? A. I wouldn't know how much he was going. He was going faster than I like to ride.

"Q. Would he in your opinion be going faster than thirty five miles an hour? A. Yes, he was."

On cross-examination Mrs. Burke further testified:

"Q. You said something, he speeded up when he crossed the tracks? A. Yes, he did.

"Q. Did you have to stop for a train or anything? A. No sir.

"Q. I believe you said that is the last you remember? A. When we went across those tracks.

"Q. You don't remember anything after you crossed the tracks? A. No, I don't."

Mr. Needham was driving some distance behind defendant's decedent's car. He noticed that just prior to the collision defendant's decedent's car swerved to the right but he did not see it swerve back to the left; that prior to the collision the car he was following appeared to be in its own lane of traffic.

At the conclusion of all the evidence the defendant moved to amend his answer to insert the word "or" in between wilful and wanton. This motion was allowed by the court but in its charge the court limited the claim of the plaintiff to wanton misconduct as there was no evidence to support any claim that defendant was guilty of wilful misconduct.

Wilful misconduct has been defined as follows:

" 'Wilful misconduct,' as used in the Ohio guest statute, Section 6308-6, General Code, * * * implies an intention or purpose to do wrong, an intentional deviation from clear duty or from a definite rule of conduct, and not a mere error of judgment."

" 'Wilful misconduct' on the part of a motorist, within the meaning of the Ohio guest statute, Section 6308-6, General Code, * * * is either the doing of an act with specific intent to injure his passenger or, with full knowledge of existing conditions, the

intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of such conduct." *Tighe, a Minor,* v. *Diamond,* 149 Ohio St., 520; *Ulrich, a Minor,* v. *Massie,* 89 Ohio App., 362, 364.

In the second paragraph of the syllabus in the case of *Helleren, Admx.,* v. *Dixon,* 152 Ohio St., 40, it is held:

"In an action against the operator of an automobile for injuries to or death of a nonpaying guest, where there is no substantial evidence tending to prove wilful or wanton misconduct of the defendant, the trial court should grant such defendant's motion for a directed verdict."

Paragraph one of the syllabus in the *Helleren case* reads as follows:

"Within the meaning of Section 6308-6, General Code, wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (*Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St., 567, approved and followed.)"

There is evidence in the record that Mr. Elkins, defendant's decedent, was intoxicated prior to and at the time of the collision. Intoxication is not in and of itself sufficient to constitute wanton misconduct. There is nothing in the evidence that the intoxication of the decedent was a proximate cause of the collision, nor in fact in any way contributed to the collision. The plaintiff in his amended petition avers that the defendant's decedent was driving at an excessive rate of speed, to wit, 55 miles per hour. The evidence does not support this claim. Mr. Needham, who was following defendant's decedent's car from the time it crossed the railroad track, testified that he was probably driving 30 miles per hour; that he followed defendant's decedent's car to the place of collision, and that he was some couple hundred feet from the collision when it happened. He testified further that he could not tell whether the Elkins' car was or was

not "pulling ahead" of him but he did not observe it. Mrs. Burke testified that Elkins was driving at 30 to 35 miles an hour when he began to increase his speed; that it was more than 35 miles an hour and faster than she liked to drive. She did not testify how much more than 35 or at what speed she liked to drive. There is therefore no evidence of any probative value that the maximum speed of the Elkins' car was in excess of 35 miles per hour; nor is there any evidence that his rate of speed at the time and under the driving conditions existing was excessive. Again it may be said that speed in and of itself is not sufficient to constitute wanton misconduct. Nothing appears in the record to support the claim that speed was the proximate cause of the collision or in any way contributed to cause the collision. Mrs. Burke testified further that she remembers nothing after they crossed the railroad track, which was, according to the evidence of several witnesses, a distance of several hundred feet, two and a half blocks, or a quarter of a mile from the point of collision. How the Elkins' car traveled this distance, at what speed and in what manner the record is silent. After crossing the railroad track the only evidence concerning the manner in which Elkins drove his car was the testimony of Mr. Needham that this car swerved to the right which did not and could not be the cause of or contribute as a cause to the collision.

We find nothing in the record to support the claim of the plaintiff that defendant's decedent's manner of operating the car he was driving was a proximate cause of the collision.

A careful reading of the record fails to disclose that the conduct of defendant's decedent "manifests a disposition to perversity," nor do we find from the evidence that the surrounding circumstances and existing conditions were such at the time that defendant's decedent would have been conscious that his conduct would in all probability result in injury.

It is the opinion of the court that the plaintiff has failed to produce any evidence that the defendant's decedent's conduct was such as to charge him with being guilty of wanton misconduct, or that his conduct was such as to be a proximate cause of the collision. In the court's refusal to direct a verdict at the close of all the evidence and in refusing to grant a judgment for the defendant notwithstanding the verdict we find prejudicial error which requires a reversal of the judgment.

There being no evidence that the defendant's decedent was guilty of wanton misconduct or wilful misconduct and no evidence that the conduct of the defendant's decedent was the proximate cause of the collision, the court coming now to render the judgment which the trial court should have rendered enters final judgment for the defendant.

*Judgment reversed.*

GUERNSEY, P. J., and YOUNGER, J., concur.